Good morning, and may it please the court. Sonam Henderson for the appellant, Ali Elmezayen. I'd like to reserve three minutes for rebuttal, and I'll try to watch my clock accordingly. Thank you. Mr. Henderson, I'm going to ask you to keep your voice up. I'll do my best, Your Honor. And my plan is to begin by discussing the jury selection issue. And then, with regard to the evidentiary issues, I hope to briefly address a point about the harmless error analysis. And, of course, I'm happy to answer any other questions the court may have. So, in terms of jury selection, the Sixth Amendment guarantees a criminal defendant a trial by an impartial jury, one that will rationally evaluate the case based on the evidence in front of it. What specific questions do you claim the district court should have asked, other than to ask the jury whether they had any experience with autism? So, the specific question they needed to ask, I mean, the way the court said, we asked for the court to inform the jury about the disability so that the courts catch all question of, is there anything about this case that might cause you to be impartial, would be meaningful. But the question's not meaningful because they're not told that the kids have a severe disability. So, the question's all right, but it should have had a predicate question saying, there are two children who are autistic in this case, and therefore, I'm asking you this question. Not just that they're autistic, Your Honor, that they're severely disabled. Because the thing with autism is it's a spectrum disorder. That fact came out, did it not? Those facts came out. Not in jury selection. Well, in jury selection, the judge asked a very open-ended question, whether any jurors, sorry, whether the prospective jurors had any experience with autism. And I think four of them came forward, and they were questioned at sidebar. Do I have that wrong? I don't know the numbers. He does ask an open-ended question, do you have any experience with autism? Right, so why isn't that good enough? He hasn't talked about severe disabilities, but he's asked the broadest possible question, is there any experience with autism, and he finds four folks who have had some experience. Well, a few things. Forgive me, and they came to sidebar, and were questioned further? I believe that's right, Your Honor. Okay, go ahead. So in terms of experience with autism, that doesn't get at the many, many people who, even if they lack direct family experience with autism, are still going to have deep and strong sympathy for severely disabled children. I think most people would have to stop and ask themselves, can I be impartial in the face of charges that these helpless disabled children were killed because of their disability? So when you ask, do you have experiences with autism, and you're not asking about severe disability generally, so you're not, if the jurors or the veneer members had experiences with other debilitating things. Terrible policy or something. Exactly. Is that the problem? That's not the only problem, because I think you could still have no experiences with those things and still have strong feelings. About protecting children with disabilities. Exactly. You've seen people on the street, you feel terrible sympathy for them, and you cannot face these charges or deal with these charges in the impartial way that's required by the Constitution. So the question you would have had the judge ask is what? So either, I mean, I think the thing that we requested of the judge was that the judge inform the jury that the children who died were severely disabled, so that the judge's catch-all question of, you know, was there anything about this case that's bothering you or that might cause you to be impartial, so that question had meaning. That question had no meaning with regard to this. I understand that part, but he did ask if the veneer had any experience with autism, and I just want to make sure that that question was asked before the catch-all question. Is there any reason you shouldn't sit on this jury? Is that a correct understanding? Yes, but again, I don't think that covers it because you're not getting at the severe disability. You're not getting at the children being the ones who had autism. I understand your argument. Okay. You think that the juror might say, yes, I would judge more harshly a father who killed his children if I knew the children were autistic? I do, Your Honor. To me, that's... We know it's important to the case because the government has hammered it at every opportunity, right? The government didn't introduce the case to you in its brief by saying, hey, this is a case about a father who murdered his children. They say, this is a case about a father who murdered his disabled children. That is a key fact, and it's a key fact about their theory of the case. So their theory of the case is that he's fed up. He's fed up with taking care of these children who have extreme needs, and so then he comes up with this scheme to kill them off and profit from it. That's their theory of prosecution. It's not a minor detail. It's not a small item on top of the fact that they were his children. It's the central part of the government's theory of the case. Are there other problems you're alleging in jury selection? Yeah. I mean, there's also the failure to properly voir dire about the abuse, the allegations. Domestic violence. Yeah, years-long domestic violence allegations. And in that, again, there's a general question asked about whether people have experiences with, I believe it's domestic or family abuse. That question. And also the judge read, I'm not sure if the judge read it, but the counsel, as I understand it, agreed upon a stipulated blurb about the case, and that told the jury that the defendant was charged with attempting to kill his children and his spouse. Yes. Okay. But, again, that's separate from the idea that he'd been allegedly abusing her for years. I mean, I think the alleged abuse, the government's using it to prove the charges. It's using it to prove that he's as depraved as what they say he is. But the jury was asked if they had strong feelings or experience with domestic violence? Not strong feelings. Experience with? They were asked about experience, and so, again, you may— So if anybody raised their hand, then was there an opportunity for additional questioning? I don't believe there was an opportunity for, like, attorney additional questioning. I mean, the attorneys asked if they can ask questions, and the judge mostly controlled the questioning. Did anybody raise their hand and identify themselves as a person who had experience with domestic violence? Yeah, there were—I'm not sure how many, but there were a couple. But you don't know how the judge followed up? I don't remember off the top of my head how the judge followed up. But, again, I don't think those people matter so much. I think it's the people who don't have the direct experiences but still have strong feelings about domestic violence. So our standard is very broad. In pain, we say, basically, as long as the judge asks broad questions that could elicit the information, that's sufficient. And this doesn't fall into the three strong feelings category that we have of child sexual abuse, narcotics, and insanity defense. So how do you show that there was a reasonable possibility of prejudice? You're just saying it's common sense, or is there any evidence in the record? Or what is your argument in light of our very broad, permissive attitude towards how the voir dire is conducted? Well, I think—and push back on a couple things there. I mean, in terms of pain, there it's—the issue, the key emotional issue is there on the face of the charges, right? I believe—I don't remember if pain was the sex abuse or the drug case, but in either case, it's right there in the charge. And so when the judge asks a general question, is there anything about the case that bothers you, it's clear that that issue is present. Here it's not clear. And so what's your strongest case to say? Because essentially you're saying unless the judge gives a precise question that the defense requests, there's an error. So what's your best case supporting your position? I'm not saying that at all, Your Honor. I'm saying that this is a matter of strong feelings, and that's another point in your question that I don't think is accurate. There's not a case saying the only things that are in our category of strong feelings are child sex abuse and drugs. Those are examples. Those are the ones we've recognized. Those are the ones you've recognized, but the standard itself is quite broad. These are things that—what are the things that the population in general is known to have strong feelings about? And our argument is that these are matters about which the population has strong feelings, because we know that, I guess, by common sense and experience. We know it by analogy to the drug sales and sex abuse. I think I would be surprised to learn that the population in general had stronger feelings about drug sales than they do about domestic violence and about the alleged murder of disabled children because of their disabilities. And again, we also know it by how the government's using it, because they're hammering it. They're making it the central point. And they do that because it has a strong emotional pull, and they know that. I think you should go to your evidentiary issues. You only have five minutes left. Yeah, no, thank you, Your Honor. I appreciate that. So in terms of harmless error on the evidentiary issues, for all three of the evidentiary issues I'm talking about, like Cortez's human lie detector, Dr. Bruno's misleadingly incomplete account, Wicks' red flag testimony— what's your biggest claim of error as to evidentiary matters? I think the biggest—I think the most obvious one, I think, is Cortez's human lie detector. All right, stop. Talk about that, would you? Because I think it's just absolutely clear that you can't testify about the credibility of another witness and what he's doing here where he's saying, oh, this is how an expert tells what credibility is, and here he's doing all the things that are incredible. That seems to me to clearly violate it. But in terms of the harmless error, I address a lot of it in my reply. There's a point I don't think I got to, which is throughout the case, the government's claim that it was bizarre and maybe indicative of criminal intent that Mr. Almazayan bought so much insurance on the children. So they're saying he might have sought $5,000, $10,000 for funeral expenses, but how could he buy $30,000? How could he buy $100,000? And that argument has some appeal, but it doesn't actually fit the evidence. What the evidence shows is that what he bought for the kids was a standard option with a coverage amount determined as a set percentage of the adult coverage. And so I don't know that you have it in front of you, but if you were to flip to SER 236, the government's excerpts of 236, you'd see the application for mutual of Omaha, and you'd see that there are only two checkboxes in terms of coverage. One is covers myself only, and the other is covers myself, my spouse, and all my eligible children. There's an individual plan and a family plan. So in order to cover his wife, he has to also cover his children. Then if you go forward to SER 241, that's a phone call with mutual of Omaha rep. Mutual of Omaha rep says, Do you want to cover your children as well? Yes. Okay, we can do one policy there for the family. Here's how that works. The children's benefit would be 10% of the amount that covers the primary insured. So what we're seeing from that is not that he's setting out to buy $30,000 in insurance for the children from mutual of Omaha, but that mutual of Omaha is offering him the coverage, and they're offering him the amount at a set amount. They're not offering $5,000 or $10,000 for funeral expenses. They're offering this set family plan, and he purchases that. I guess if you have no questions about that. Was the jury told this? The evidence was before the jury. I'm not sure that argument was specifically made for the jury. Was this transcript excluded? Was it some reason it couldn't have been? Sorry? This transcript wasn't excluded? No, no. These excerpts are from exhibits that were in the record. Right, so I'm trying to get at the prejudice here. I'm not saying it was excluded. I'm saying that's part of the—if we're talking about harmlessness and the government's making it harmless, if there was an error on Cortez or on any of the other issues, it was harmless because there's so much overwhelming evidence. One of their points for being overwhelming evidence— Is that they bought all this insurance. Is that they bought all the insurance on the kids. I'm saying that's not such a great argument. Isn't the bigger problem you've got that there was an instruction to the jury as to the police detective they saw the interview, right, and then as to both of these witnesses? Well, the other witness, the insurance salesperson was— I think it was a salesperson or maybe the insurance claim person— was presented by video debt, right? So the jury saw both of them, and then the jury was instructed that it was their job to determine credibility, right? The jury's instructed that it's their job to determine credibility, but what Cortez is doing is telling them how to go about doing it. He's giving them this expert view. Well, how is that different? I agree, and I agree you may have a problem there, but I'm trying to figure out why it's different than the instruction the court gave. Because the instruction the court gave talks about kind of the same stuff. It doesn't. The instruction the court gives is just general demeanor. Take a look at demeanor. You can take that into account. Right, how is that different? He said evasiveness. He's saying these specific items. Oh, if he's evasive, that means he's lying. I imagine that in another case a police officer might say, oh, if they answer the question too directly, that means they prepared ahead of time. But the point is he's pointing out for them specific things that he thinks indicates lying. It's their job to assess credibility, no doubt. The judge did direct them, but you think that what this witness talked about when he said, I'm looking for the truth and here's what I look for, that's an unfair summary. And I'm a super expert. I have so much experience. And so what he did you think was different, qualitatively different, because he did it for the jury? He does it. He's telling the jury what aspects of the demeanor to look at, not just look at demeanor generally. He's saying this is how you do demeanor. Do you have the ER site for the instruction? Not off the top of my head. I probably do. I'll find it. Go ahead. Thank you. I'd like to reserve my last ten seconds. We'll give you a minute for rebuttal. Thank you. Counsel, do you happen to have the ER site for the instruction? I don't. I bet my law clerk's got it tabbed for me. I'll find it. Good morning, Your Honors, and may it please the Court, David Ryan on behalf of the United States. The defendant received a fair trial during which a properly selected jury heard overwhelming evidence of his calculated scheme. Mr. Ryan. Yes, sir. Do you think that Judge Walter made a mistake in overruling the opinion objection made to the testimony of Mr. Cortez as to his belief that the defendant was lying? The question that was objected to, or the answer that was objected to, was in response to the question at ER 685 and 686, Your Honor, which was, what were you interested to see as an investigator when the defendant answered a specific question about whether he had insurance policies on his children? That was preceded by his answer, well, in all of our interviews, either with defendants or witnesses, we are looking for truth. This is a witness that was presented for the purpose of showing the jury that the defendant was not truthful, correct? No, Your Honor, I don't believe that was the purpose. The testimony at page 685 indicates that Cortez was talking about specific indications of evasiveness, repetition, et cetera, which indicated that the witness was not telling the truth. What Detective Cortez was testifying about was introducing excerpts of his interview with the defendant, and before introducing the last excerpt, he was going to, he did, share his observation about the defendant's demeanor. The observations were introduced based on his expertise as 19 years as a witness, and said these individual items of behavior tell me that a person is not telling the truth. That is what we are looking for, the truth. And when I observed these indications on the defendant of evasiveness, et cetera, the clear implication was he's not telling the truth. That is credibility testimony, and it is not permissible. Why was it not prejudicial? Answer that question. Yes, Your Honor. The subject matter of that answer was not prejudicial for at least three reasons. Did you say the subject matter of that answer? Sorry, that answer was not prejudicial for at least three reasons. Number one is the subject, what he was opining about, if Your Honors conclude that that was an improper opinion, was that the defendant was evasive when he said, when he answered the question, do you have any insurance on your children? That was not a disputed point that the defendant was lying about that point. He said he was asking not only about the amount of insurance, but also how the accident happened. So he asked about both those things. So it's not, the question wasn't limited to the amount of insurance. That was proved by other evidence. But he also asked about, he said, I was interested in finding out the truth of how the accident happened. Yes, Your Honor. So the clip that he was introducing when he was explaining the observation of demeanor, the clip was about the insurance policies. The other clips that had addressed defendants, in which the defendant had addressed how the accident happened, those were also demonstrably proven lies by other documentary evidence in the record. So defendants said in prior clips that Detective Cortez was referring to, defendants said, number one, the car slowly rolled over the edge. That was directly reputed, rebuked by several other eyewitnesses, including Right, okay. And then the defendant also had said, with respect to the way the crash happened, defendant had said his window was barely open and he didn't know how he got out. There were several factual inconsistencies. But Judge Bay is asking a different question, and I've got the same one. How is it permissible for him to opine on whether he thought that witness was evasive? I'm sorry, Your Honor. I was intending to answer the question of why it was not prejudicial, assuming it were improper opinion to say that he thought the defendant was evasive. Okay, so forgive me if I interrupt Judge Bay's question. If it goes only to prejudice. What's the third reason? The third reason is that the government did not tell the jury to rely on any opinion that Detective Cortez gave. Instead, the government argued to the jury that it should watch the video for themselves and that it should look at the insurance policies, the forensic evidence that his window was down, the other witnesses who said he had gone off the edge quickly. And that's what differentiates this case from Binder and Hill, where experts not only directly opined that victim witnesses could be believed in the case of Binder, repeatedly said that the victim could be believed, but then the government specifically asked the jury to credit that opinion, lacking any other evidence, to corroborate that testimony. So the government relied and asked the jury to rely on that opinion. Here there was extensive corroborating evidence, both that the defendant was lying about those specific statements and, more generally, that the defendant was guilty. But he also relied on Cortez at page 1512. Now with these last lies, as Detective Cortez told you, it's important not only what he said, but how he said it. You remember that testimony, right? So he was invoking Cortez's testimony to show that the defendant was a liar, even in final argument, correct? I'm not sure, Your Honor, that that's what was being— what the invocation was is that what was important was what he said and how he said it, which is true. That's invoking the testimony about the demeanor that was observed, not that Cortez should be believed because he's so experienced and his opinion should be— Cortez's testimony was a demeanor indicated to him, since he was looking for the truth, that the defendant was not truthful. That's not what the closing argument was. The closing argument was you heard what he said and how he said it, and you can see that for yourself. And how he said it. Correct. If it had been about you can see it for yourself, that would be one thing. But could you back up and take your best run at explaining to me why that was permissible in the first place, setting aside prejudice for a minute? Is it the government's position that this was permissible? I think certainly the easy— One thing if you're arguing it's a one-off, it's one thing if you're arguing it was a small part of the trial, but that is not what I hear you arguing today. I want to make sure I've got your position straight. Yes, so certainly it is true that it is our position that it was a one-off, that it was harmless, and that it was not prejudicial. And I think it's a far cry from— Have you argued any of those positions in your brief? Yes, Your Honor. I believe we distinguished this case from Binder and Hill. We explained why this case was at least like sign, where the improper admission of adverse credibility findings did not warrant reversal due to strong evidence. I think I read your brief differently, but I've interrupted you trying to answer my question. What's your best run at this, that this was a proper question? To be sure, I don't believe we conceded that fact in our brief, but we certainly argued why even if it were error, it was harmless. I want to know if you think it was error, counsel. To answer your question, what the detective was asked to do and did was did not ever directly state an opinion that he thought the defendant was lying. Instead, what he did was he described what he looks for when evaluating the demeanor. Counsel, you're telling me what the record shows me. I just want to know if you think that was a proper question. Is his testimony permissible, or is it an impermissible statement of opinion going to credibility? I believe our position is that his testimony was credible and certainly was not an abuse of discretion for the court to overrule it. But I do not want to quarrel with the fact that the easiest path to affirmance here is that even if that were an improper statement, it was not prejudicial and it was harmless error in light of the overwhelming evidence, both that he lied in that interview and the overwhelming evidence of guilt generally. I had a slightly different question about whether it was proper or not, but you seem not to want to argue that. I'm happy to answer the court's question. I had a concern about whether Cortez—Cortez had not been qualified as an expert, right? Correct, Your Honor. But his statements about what he looks for based on his experience didn't seem to correspond with Rule 701, which you can say is a lay witness, which is supposed to be on your perceptions of that person in that case. How do you square that with Rule 701? To the extent that Detective Cortez started to go beyond introducing the clip by explaining that he was looking for a defendant's demeanor and made an observation about that demeanor, I think that raises a difficult question under the scope of Rule 701. But I do want to make sure to emphasize our point that to the extent his testimony on that question went beyond what would be permissible under Rule 701, I think the best cases the defendant has cited would be Binder and Hill, and this case is a far cry from those with respect to harmless error and prejudice. In Hill, a qualified expert, this Court held flatly and repeatedly said defendant was dishonest, did not make sense, and the government directly asked the jury to credit that opinion because it lacked direct evidence of the lie, and this Court reversed only in light of the, quote, relative weakness of the government's overall case. So not prejudicial in two ways. First, because the topics the defendant was discussing, there was other evidence he was lying about those specific topics. And then, two, not prejudicial in light of, in this case, the relative strength of the government's overall case rather than the weakness of the overall case. Oh, forgive me. Go ahead. I'm going to change the subject, so I don't want to, if you want to follow up. Yeah, I have just another question. So opposing counsel argues that the video recording that Mr. Cortez was commenting on was really their only opportunity to view Mr. Almazayan's recounting of the incident, and it was interspersed with Cortez saying, well, these are the sorts of behaviors which indicate lying, and we see those in the videotape. And so because of that, they argue that it's hard to say that this error was harmless. What's your response to that? A few things, Your Honor. So there were, I believe, six video clips played from that interview, and in each of them the defendant said things that were directly contradicted by the other documentary evidence that the jury heard. So the fact that the defendant lied in several of those clips was amply proven, and in fact the fact that he knew he had insurance on the children and therefore that that was a lie was actually not disputed. The defense never attempted to dispute that he had insurance and knew he had insurance on the children, nor that the window was all the way down, nor that the car went off quickly as everyone saw. So the specific items that the detective discussed where the defendant's demeanor indicated evasiveness, the jury had independent evidence that those were in fact lies, and that's what the government repeatedly pointed the jury to. So without Detective Cortez's answer on that question, the jury had ample evidence both that those were lies and that stepping back and looking at the overall evidence of the scheme, this was a two-week trial with hundreds of exhibits covering a two-year scheme, and that was the focus of the case was to look at the entire timeline of the scheme and put all the pieces together, much of which was in the documents, in the recorded calls the defendant made to the insurance company. Did the defendant testify in the case? He did not, Your Honor. I have a question about Ms. Wicks. I think she's the insurance witness. Yes, Your Honor. And she was presented by video deposition, is that right? Yes, Your Honor. Okay, and she testified that she was looking, there were red flags, right? And I appreciate from the government's position there were some pretty obvious red flags, but she was allowed to testify that this was unusual, defendant's conduct was unusual at best and perhaps fraudulent. How is that permissible? So what her testimony, the testimony that is objected to here is that her description of the two common features of insurance fraud, stacking and over-insurance, was criminal profile evidence and not modus operandi evidence. And her testimony on those topics explained what was otherwise a difficult concept for the jurors, for a lay jury to understand, which is why it is useful in committing an insurance fraud scheme to separate out your policies with different companies and not tell each one of them because that allows them, that does not allow them to, as Ms. Wicks said. That doesn't sound like a very complex scheme to me. It doesn't sound complicated to me either. Judge Bea and I both got it right off the bat. So what's complicated about that? So what it allows a person to do is to evade the insurance company's attempts to limit insurance policy coverage based on, among other things, income and earnings. We know. It's just not complicated is the problem. So why was she allowed to testify that his conduct was unusual at best and perhaps fraudulent? I think the district court found that her expert testimony on those topics would be helpful to the jury to explain those topics, and I think the standard for this court is whether the district court's finding that it would be helpful was an abuse of discretion. This deposition testimony was subject to redaction. She didn't just blurt this out, right? That's correct, Your Honor. You had this in the can, and the government went through and segregated the portions of the deposition testimony to be presented to the jury. That's correct. The arguments below were on 704 grounds primarily, so there were a number of redactions made and that this argument was not raised below. I would have to confirm that this question was not objected to below, but this argument that her testimony drifted into criminal profile was not raised below. So for that reason— So now here we are on appeal. Do you have an argument that this is permissible testimony? So I think our best argument with respect to that specific question is that what she was describing was foundational to her testimony as to why his conduct was material to her investigation. So she was not the salesperson. She was the person primarily— The claims person, right? She's evaluating the application for benefits. He's the investigator, yes, Your Honor. Well, that doesn't help you. That makes it worse. Well, so what she was describing was why what he did, had she known, had he not lied and omitted facts on the policies, that that would have been material to her investigation. So she's explaining, here's what I would have done had he not lied. If I knew he had a policy with another company, I would have gone and talked to that other company. If I knew he had policies above a certain amount, I would have looked at his income and tried to understand and do a more fulsome investigation. So that was the context in which she was explaining what she was looking for. And he's charged with insurance fraud. Yes, Your Honor, and she was investigating that. And we were charged with— It's not some tangential issue. Well, it's not tangential, although the facts of what he— the facts of his over-insurance and stacking were amply demonstrated in the record. So I don't know that her statement about that was central. But the topic of how much he purchased in comparison to his— I certainly agree it wasn't central. I'm wondering why the government admitted it at all, because it's taking a risk here it just didn't need to take on this evidence, Counsel. Yes, Your Honor, I understand that. And I would turn, with this evidentiary point as well, to not only harmlessness and lack of prejudice, but also, I believe, plain error because this objection was not raised below. You're sure of that? I had in my note that you weren't sure and I needed to double-check. I'm sorry. By this objection not being raised below, I mean there was not an objection below that her testimony was improper criminal profile evidence as opposed to modus operandi. Okay. Okay, we're taking you over your time. I'm sorry. Thank you, Your Honor. Okay, thank you. And we'll give you a minute for recital. Thank you, Your Honor. Just very, very quickly, I want to get back to this notion that the Cortez testimony wasn't prejudicial. The government claims that he made other lies about how the accident happened that were corroborated in other ways. They point to the window being rolled down and the car going. But there are stark contradictions, counsel. Between? Well, the car zooming off the pier and rolling forward slowly. He didn't tell Detective Cortez that it rolled slowly off the pier. If you look at the site the government has in its brief, at page 13 of its brief is ER-2124. All he's doing is talking about parking slowly.  The Child Protective Services investigator, he says something about it rolling slowly over the edge. But here in the clip that they introduce through Detective Cortez, that Detective Cortez is talking about and is saying is lies. There's not a statement that the car rolled slowly over the edge. And then just really quickly, they say the window was rolled down. The idea that the window was rolled all the way down, that was based on an examination of the car three years after the fact by an FBI agent, and after a bunch of other agencies had already been through examining the car. I don't think they've established that at all. Thank you very much. All right. The case of United States v. Ali Al-Mazayan is submitted.
judges: BEA, IKUTA, CHRISTEN